UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE REYNOLDS, | No. 2:19-cv-02193 TLN GGH P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| R. NEUSCHMID, | |
| Respondent. | |

*Introduction and Summary*

Petitioner, a state prisoner proceeding in pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

Petitioner, Willie Reynolds, federally attacks his domestic abuse conviction in this habeas action on one, somewhat confusing (and unbriefed) ground: The jury instruction, CALCRIM 850 unconstitutionally permitted consideration of an expert's testimony on intimate partner battering to be used to enhance the complainant's credibility thereby lowering the prosecution's burden of proof. Expressly omitted was a second issue raised on direct appeal regarding the possible, inconsistent wording of CALCRIM 850.[1] As the challenged instruction in no way raises a

---

[1] Petitioner consciously omitted the second issue as he expressly related in the petition that the

1

presumption of guilt, or even a presumption concerning the finding of a critical fact, or in any way even addresses the burden of proof for conviction, *see infra*, the only possible issue is the instruction permitted jury consideration of evidence which petitioner believes to have been inadmissible/prejudicial in the first place, albeit only a pro forma objection had been made to the admission of the evidence.[2]  As construed, the petition should be denied.

The traverse does not touch upon the one issue above, but rather seeks a stay so that a new issue can be exhausted: the state court erred because it did not have subject matter jurisdiction over his case.  Because this claim in no way raises a cognizable claim in federal habeas corpus, the request for stay should be denied.

*Factual Background*

The court has conducted a thorough review of the record in this case, as well as the California Court of Appeal, Third Appellate District's unpublished memorandum and opinion affirming petitioner's judgment of conviction on direct appeal. The appellate court's summary of the facts is consistent with the court's own review of the record. Accordingly, it is provided below:

> Defendant had an intimate relationship with the victim. A witness saw defendant arguing with the victim near a restroom in a park. He saw the victim go into the restroom and defendant follow her. After a couple of minutes, defendant emerged from the restroom, and two minutes later, the victim emerged with blood on her face. The victim initially told several people that defendant hit her but she recanted at trial and claimed she was injured after a fall in the bathroom during a seizure. Right after the incident, a witness saw the victim bleeding and assisted her. The victim said that her boyfriend hit her in the head during an argument.
>
> Later, while the victim was treated in a hospital for a forehead laceration and fractures of the bones around her eye, she told a nurse and a treating physician that her boyfriend had hit her in the face. The victim also told a social worker at the hospital that her boyfriend had hit her, and she was afraid he would kill her if she talked to the police. In a recorded interview, the victim told an

---

second issue has been raised on direct appeal. ECF No. 1 at 2.  The acknowledgement that issue had been raised in the past, but not as a ground herein, negates any possibility that the issue was inadvertently omitted.

[2] On the issue of testimony on intimate partner battering, defense counsel first asked that the issue be held in abeyance, ECF No. 15-3 at 9, and then "object[ed] and submit[ted]" without argument. Id. at 209.

> investigating officer that defendant came into the bathroom and hit her and that she was afraid he would kill her.
>
> Subsequently, in a recorded telephone call between the victim and defendant, the victim said the police were trying to talk to her and she was "not trying to do all that." Defendant replied, "No, no, no no. No, no, no, no, no. Not that at all." The victim clarified that she was not trying to talk to the police, but they were trying to talk to her, and defendant cut her off, repeating "None at all" and "Not at all." Later in the call when discussing the charges, defendant said, "we just had a fight and that was that." Neither party mentioned the victim having a fall or a seizure.
>
> Of particular significance to this appeal, the prosecution called David Cropp, a domestic violence crisis counselor and former detective in the family abuse unit of the police department, to testify as an expert on domestic violence and intimate partner battering. Cropp testified that domestic violence is a pattern of abuse or coercion designed to control and intimidate a partner. He explained that generally, in domestic violence situations, there is a "cycle of violence" with three phases: (1) tension building, (2) an acute episode, and (3) a honeymoon phase or period of contrition. He testified that it is common for domestic violence victims to minimize the abuse and refuse to cooperate with the prosecution or law enforcement. He explained, for example, that victims of intimate partner battering will often recant and say that the violence did not happen.
>
> The prosecution also presented evidence of defendant's prior uncharged crime of domestic violence against the victim, and it was stipulated that defendant was convicted in three additional cases involving domestic violence against the victim and two prior victims.
>
> Following a jury trial, defendant was convicted of inflicting corporal injury resulting in a traumatic condition upon his cohabitant (Pen. Code, § 273.5, subd. (a)).1 In a bifurcated proceeding, the trial court found true the allegations that defendant had previously been convicted of a serious felony (§§ 667, subds. (b)-(i), 1170.12) and had served a prior prison term (§ 667.5, subd. (b)). The court sentenced defendant to an aggregate term of nine years.

People v Reynolds, No. C086778, 2019 WL 3140024, at *1-2 (Cal. Ct. App. July 16, 2019) (implicating Cal. Evid. Code § 1109).

*The Alleged Erroneous Admission of Prejudicial Evidence Does Not Set Forth a Cognizable Federal Habeas Corpus Claim*

Petitioner believes that the expert's testimony as referenced by CALCRIM 850, enhanced the victim's credibility, although at trial, in petitioner's favor, the victim had recanted all of her

3

previous accusations. Petitioner must mean that it enhanced the credibility of the victim's contemporaneous statements made right after the assault in question. There is no doubt that the expert's testimony was introduced to effect this very thing.

All merits issues in Section 2254 cases for which the state courts have ruled are viewed through the prism of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The well recognized standards are set forth below:

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011) ); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000) ). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 587 U.S. 37, 48 (2012) ). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

////

////

With respect to the use of the expert *per se*, and the instruction given to the jury on how to view the expert's testimony, the Court of Appeal held:

> The trial court instructed the jury with CALCRIM No. 850 in accordance with Evidence Code section 1107, subdivision (a), which provides that expert testimony on "intimate partner battering and its effects" is admissible in criminal actions. The court instructed the jury as follows: "You've heard testimony from David Cropp regarding the effect of intimate partner battering. David Cropp's testimony about intimate partner battering is not evidence that the defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not [the victim's] conduct was not inconsistent with the conduct of someone who has been abused and in evaluating the believability of her testimony." Defense counsel did not object.
>
> Defendant contends that because, "as in many domestic violence cases, [defendant's] guilt or innocence turned on the complaining witness's believability," allowing the jury to use Cropp's testimony to evaluate whether the victim's testimony was believable is "indistinguishable from permitting [the jury] to use it as evidence that [defendant] committed the charged crime." The contention lacks merit. It is well settled that expert testimony relating to intimate partner battering is admissible and relevant to a jury's evaluation of the reasonableness of the victim's actions and to her credibility as a witness. (*People v. Brown* (2004) 33 Cal.4th 892, 903 (*Brown*).) CALCRIM No. 850 properly directed the jury to consider Cropp's testimony for these limited purposes. It did not suggest the victim was telling the truth in her earlier reports or that defendant committed the charged crime. To the contrary, the instruction expressly prohibited the jury from using Cropp's testimony for that purpose. The prohibition against other uses was reinforced by CALCRIM No. 303, which advised the jury that "certain evidence was admitted for a limited purpose" and that the jury could "consider that evidence only for that purpose and for no other."
>
> Defendant relies on *People v. Sanchez* (2016) 63 Cal.4th 665. There, the jury was instructed that it needed to " 'decide whether information on which the expert relied was true and accurate,' " but was also instructed the expert's testimony concerning the defendant's statements and police reports should not be considered " 'proof that the information contained in those statements was true.' " (*Id*. at p. 684.) The court reasoned that the jury could not follow these conflicting instructions because it could not "decide whether the information relied on by the expert 'was true and accurate' without considering whether the specific evidence identified by the instruction, and upon which the expert based his opinion, was also true." (*Ibid*.)
>
> Without agreeing the instruction in this case was inconsistent, as were the instructions in Sanchez, we are nevertheless bound by *Brown, supra*, 33 Cal.4th at pp. 903, 906-907, where our high court held that a jury may consider an expert's testimony on intimate

5

partner battering in evaluating the victim's credibility. (*See Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Moreover, here, Cropp testified about general patterns of behavior among domestic violence victims and explained why such victims often recant their initial reports, but did not directly opine on the victim's credibility. The jury was instructed, "You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience." Thus, consistent with our high court's reasoning in *Brown*, CALCRIM No. 850 allowed the jury to consider the expert's general testimony about intimate partner battering in evaluating the victim's credibility, consistent with Evidence Code section 1107, but it did not allow the jury to adopt the expert's assessment in lieu of performing its own evaluation of her credibility. Her credibility did not turn on the expert's testimony alone. Accordingly, we reject defendant's argument.

People v. Reynolds, supra, at *2-3.

As the undersigned set forth in Rackley v. Angela, No. 2:18-cv-0948 MCE GGH P, 2019 WL 804006, at *5-6 (E.D. Cal. Feb. 21, 2019) (only quotes from the Ninth Circuit case indented below):

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. *Musladin*, 549 U.S. at 77, 127 S. Ct. 649.
>
> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, *see Williams*, 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." *Musladin*, 549 U.S. at 77, 127 S.Ct. 649. Under the strict standards of AEDPA, *we are therefore without power to issue the writ on the basis of Holley's additional claims.*
>
> Holley v. Yarborough, 568 F.3d 1091, 1101 fn. 2 (9th Cir. 2009) (emphasis added) (noting that if it were free to rule on the issue, the Ninth Circuit would have found a violation of due process.) See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008); Alberni

v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006); Soojian v. Lizarraga, 2018 WL 3155617 (E.D. Cal. June 25, 2018); Jones v. Spearman, 2018 WL 424402, *4 (N.D. Cal. Jan. 16, 2018); Garcia v. Madden, 2018 WL 910184, *15 (C.D. Cal. Jan. 5, 2018).

Holley and its progeny did not hold that if the court believes a serious due process violation exists, it is free to rule on the issue of admission of prejudicial evidence. "Without power to rule" means just that— it does not mean "sometimes has the power to rule and sometimes not." Thus, it does not matter whether the evidence analysis of the Court of Appeal was spot on, dubious, or unreasonable. No cognizable federal claim exists. Petitioner could cite Dawson v. Delaware, 503 U.S. 159 (1992) for the proposition that overtly prejudicial evidence may be a due process violation. However, the difference between Dawson and the instant case, as well as the cases cited above, is that the Aryan Brotherhood evidence introduced in Dawson was *totally irrelevant* as well as prejudicial. Dawson found the due process violation because of the lack of relevance, not simply because it was prejudicial. Petitioner does not contest the relevance of the evidence herein—just that it was prejudicial. Relevance makes all the difference as to whether one can state a federal claim in habeas involving the admission of prejudicial evidence.

Petitioner [could have argued, here,] in the traverse that if the prejudicial evidence admission would result in a fundamental violation of due process, it is actionable in federal habeas. Such an argument blows a hole in Holley, et al., so large that Holley would stand for nothing. That is, in federal habeas the sine qua non for any alleged due process error is that it resulted in a fundamental violation of a fair trial, as there is no such thing in criminal prosecutions as a "slight" violation of due process as opposed to a due process violation involving fundamental fairness. All due process violations stemming from state criminal prosecutions by definition violate some fundamental fairness. If all petitioner had to do was label his asserted evidence admission error as one involving "due process," a federal claim would be stated every time. [A] citation [to] Estelle v. McGuire, 502 U.S. 62, 70, (1992), does not assist petitioner's case as Alberni, supra, expressly held that Estelle had reserved the issue of whether the admission of prejudicial evidence could result in a cognizable due process claim in federal habeas. Alberni, 458 F.3d at 866. The undersigned is not free to ignore that holding.1 [3]

---

[3] [Fn. 1 in original text] Petitioner [might have cited] to Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998) for the proposition that unduly prejudicial, evidence admission, due process errors may be reviewed. However, Merkle was not an AEDPA case, and it cited to non-AEPA cases for this rule. Thus, it does not stand for authority that the Supreme Court has recognized a due process claim for admission of unduly prejudicial evidence. In any event, Merkle at 1103, also held that if any permissible inference could be drawn from the evidence, it did not violate due process. Clearly, the permissible inference from the [expert evidence, here, was its high relevance to the issue of the victim's trial testimony credibility (i.e., lack thereof) in recanting her previous statements in court.]

7

Petitioner has cited not a single federal case, much less Supreme Court case, for the proposition that expert testimony on domestic abuse, setting forth, in the abstract, the trilogy of possible reactions from domestic abuse victims, violates due process. That ends the issue petitioner has raised here.

Moreover, even if <u>Holley</u> did not apply, the admission of such expert testimony evidence in a number of sexual abuse contexts is well established. <u>See e.g.</u>, <u>United States v. Lopez</u>, 913 F.3d 807, 821-824 (9th Cir. 2019) (sexual battery); <u>United States v. Bighead</u>, 128 F.3d 1329 (9th Cir. 1997)(child abuse); <u>United States v. Charles</u>, 691 Fed. Appx. 367 (9th Cir. 2017) (child sexual assault). Although the "diagnosis" of a victim's reaction to abuse is somewhat tautological, i.e., it would seemingly apply to every recantation, the jury was able to determine its usefulness in this case given the testimony of the victim (hardly persuasive at all). Juries perform such functions in review of expert testimony day in and day out. In light of this authority, an allegation of a fundamental due process violation is not viable.

To round the bases, petitioner makes no challenge to the expertise of the witness—simply that the witness' expert testimony made it more likely that the jury would believe the victim's contemporaneous statements as opposed to the trial recantations. Similarly, petitioner makes no challenge to the scientific validity of the expert's testimony. Like all experts' testimony designed to influence a jury's factual determinations, the admission of the expert's testimony in this case was designed to perform the same function. No violation of due process is evident in the least.

*The Motion to Stay*

Petitioner also asks that the court grant a stay of his present habeas to exhaust an issue: that because the state courts lacked jurisdiction over his case, he is entitled to have his conviction vacated. ECF No. 16. No specification is given as to why the state court lacked subject matter jurisdiction under state law. But no matter what (unknown) state law to be addressed assertedly denies the state courts' subject matter jurisdiction, petitioner does not present a viable claim in federal habeas corpus, and therefore, granting a stay at this point would be an idle act. The case of <u>Smith v. Baker</u>, No. 2:07-CV-00318 JCM, 2014 WL 5776212, at* 7 ( D. Nev. Nov. 5, 2014), explains why:

Smith also claims that, in denying Claims One and Two, this court failed to recognize "the importance of subject matter jurisdiction as one of the oldest and most sacred purposes of the Great Writ." ECF No. 177, p. 40. He misses the point, however. This court did not suggest that a judgment rendered by a court lacking subject matter jurisdiction can nonetheless be valid. Rather, the court concluded that the question whether the state court possessed subject matter jurisdiction in this case was a matter of state law beyond the province of the federal habeas court. The following excerpt from an Eighth Circuit case is instructive:

> The district court stated that "[t]his Court can think of no greater denial of due process or of a greater miscarriage of justice than to be sentenced to prison for a term of four years by a court which has no jurisdiction." To reach the question of denial of due process or miscarriage of justice, however, the court must first determine that the sentencing court has no jurisdiction. This is not, however, a determination for the federal courts when the question of jurisdiction is one of valid state law only.
>
> Jurisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law: "The adequacy of an information is primarily a question of state law and we are bound by a state court's conclusion respecting jurisdiction.... This determination of jurisdiction is binding on this [federal] court." *Chandler v. Armontrout*, 940 F .2d 363, 366 (8th Cir.1991); *see Johnson v. Trickey*, 882 F.2d 316, 320 (8th Cir.1989) (adequacy of information is question of state law binding on federal courts). The Second Circuit has directly addressed the question of federal review of state court jurisdiction based on state law, denying a habeas petition brought on the claim that a New York statute deprived the state trial court of jurisdiction. *Roche v. Scully*, 739 F.2d 739, 741 (2nd Cir.1984). The court stated that " 'no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law.' " Id. at 741–42 (quoting *United States v. Mancusi*, 415 F.2d 205, 209 (2nd Cir. 1969)).
>
> The question of whether the Missouri courts had jurisdiction to sentence Poe was one solely of state law and is therefore not properly before this court....

*Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir.1994). *See also Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) ("Determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."). Smith cites to no authority that would permit a federal habeas court to set aside a state court determination regarding the existence of subject matter jurisdiction under state law. Thus, the court stands by its denial of Claim One and Two.

9

If this court in the present case were to stay the present action so that petitioner could go back to exhaust his claim, two things might happen. The state court could grant his petition under state law in which this federal court would have no further review power, or even a need to review, i.e., the conviction would be vacated. Or, the state court could deny the asserted subject matter claim, and a resurrection of that claim in this federal proceeding would meet the inevitable result of being dismissed because it is a claim based on state law.

As set forth in <u>Smith</u>, and in many Supreme Court cases, federal courts are bound to apply the law set forth by the state courts in interpreting state law, even if the federal court might think that interpretation to be in error. <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005). Because petitioner's subject matter jurisdiction claim would be reviewed under state law, the matter would end there.[4]

Accordingly, the motion to stay should be denied.[5]

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, for the aforementioned reasons, IT IS HEREBY RECOMMENDED that:

1. The Motion to Stay (ECF No. 16) be denied;

2. The petition for writ of habeas corpus (ECF No. 1), be dismissed with prejudice; and

3. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge

---

[4] There is only one extremely rare circumstance where the state court's lack of subject matter jurisdiction would raise a cognizable claim. That is the situation where federal law preempted any state court action whatsoever, e.g. immigration law crimes. Nothing in petitioner's conviction would involve such preemption.

[5] The state law issue being controlling, there is no need to analyze the other factors pertinent to staying a federal habeas action under <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).

10

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 13, 2020

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE